## ESTATE OF JOHN LEVINSON, DECEASED.
[No. 9438; decided May 2, 1891.]

**Inventory—What must be Included in.**—An executor must return in the inventory everything of value belonging to the estate of his testator, whether it is property owned by or a debt due the estate.

**Inventory.—The Goodwill of a Business is Property, so is a Trademark;** and where the decedent was a member of a partnership, the goodwill of the business and a trademark owned by it should be embraced in the schedule of assets in the inventory, unless there is a clear provision in the articles of partnership excluding the estate of a deceased partner from a share in the value thereof.

**Contracts.—Particular Clauses of a Contract are Subordinate to Its General Intent,** and the whole of a contract should be taken together so as to give effect to every part if reasonably practicable, each clause aiding in the interpretation of the other.

**Inventory.—Assets of a Firm Include the Goodwill of the business** and trademarks owned by the firm.

**Inventory—Doubtful Assets.—Even if the Question is in Doubt** and equally balanced, whether an estate is or is not to be deprived of a share of the goodwill of a business trademark, it must be included in the inventory.

Horace W. Philbrook, for heirs of decedent.

Jarboe & Harrison, for S. W. Raveley, executor.

Reinstein & Eisner, for surviving partners.

COFFEY, J. Mrs. Fanny Levinson, the mother, and Miss Julia Levinson and Miss Ida Levinson, sisters of the above-named decedent, all being legatees in the will of said decedent, have presented a petition asking that the executor of said will be required to make and return to the court a true inventory and appraisement, and also that he require an account from Wm. J. Newman and Benjamin Newman, surviving partners of the firm of Newman & Levinson, of which firm said decedent was one of the founders and a member up to the time of his death.

The executor has demurred to said petition, contending that it does not state facts sufficient to entitle the petitioners to relief. The said surviving partners have also filed a demurrer to said petition upon the same ground.

The matter before the court is the issue of law arising upon these demurrers.

The question to be determined is whether the estate of said decedent has any interest in the goodwill of and in the trademark belonging to the partnership of Newman & Levinson up to the time of the death of the decedent, John Levinson; whether the said goodwill and trademark respectively must be valued in determining what is due to said estate from said partnership, or from the said surviving partners. This question is to be determined by a consideration of the provisions of the articles of partnership of said firm, set forth as Exhibit "C" in the petition, and particularly of that clause of said articles designated as "XII," pages 22-24 of said petition, in connection with the averments of said petition.

In the inventory and appraisement returned by the executor to the court the interest of the estate is thus set forth: "The interest of the deceased in the partnership of Newman & Levinson, of which the deceased was a member at the time of his death, the business of said partnership being carried on at Nos. 129-131 Kearney street, San Francisco, appraised at $20,790.80."

It is set forth in the petition that before returning this inventory the executor was by the petitioners requested to cause the inventory and appraisement to show in detail what was meant by "the interest of the deceased in the partnership of Newman & Levinson," therein mentioned, and that the executor refused to comply with said request. It is also set forth in said petition that no share of the value of the goodwill of the business of said partnership or of the trademark mentioned in the petition is included in said inventory.

I should have decided this matter from the bench at the conclusion of the oral argument, December 10, 1890, but from respect to the desire of counsel to supplement their views by briefs. The delay in announcing the decision of the court is due to the labor imposed by examining the elaborate expositions of counsel and consulting the numerous authorities by them cited. While the discharge of this duty involved labor, it was also interesting and instructive, and it is to be hoped that the result will be satisfactory to the prevailing party.

It is insisted upon the part of the demurrants that by the articles of copartnership the surviving partners became debtors of the estate, and that the only relation here being that the debtor and creditor, the representatives of the deceased partner have no further connection with the concern except as creditors; and that, upon the principles laid down in all the authorities, the demurrant executor has returned a complete and perfect inventory, the omission of the goodwill and trademark being necessary under the terms of the articles of copartnership, which vested in the surviving partners such items to be accounted for to the estate as a debt, but not as an available asset to be inserted in the inventory.

It is claimed by the demurrants that Article XII of the copartnership agreement transfers in terms or by necessary implication the goodwill of the firm, and that the articles of copartnership should be the guide for the court, and that where they do not violate the statute such articles may take its place.

It is immaterial, with regard to the subject matter of this controversy, whether the relation of the estate to the partnership is that of owner of an interest therein or that of creditor. Even if only a creditor, it is still the duty of the executor to return a correct statement of the debt due the estate from the partnership.

The legal proposition here is simply this: If it be a thing of value it must be returned in the inventory. This is the law of this state, binding upon the executor. It is scarcely necessary to cite the sections of the codes defining the executor's duty in this regard, so well is it understood, nor is it requisite in this connection to repeat references to the sections fastening the quality of property upon goodwill and trademark. It is settled that these things are property, and should be embraced in the schedule of assets in the inventory and appraisement, unless there be an express agreement for their exclusion.

To exclude the estate from a share in the value of the goodwill and trademark of the partnership, there should be a clear provision to that effect in the articles of agreement.

Article XII of the agreement of copartnership, upon the construction of which it is claimed the decision of this controversy must depend, is as follows:

## "XII.

"In the event of the death of one of the copartners the inventory provided for herein shall be taken as expeditiously as possible, and without unnecessary delay; the surviving partners, if requested so to do, shall admit to the place of business of the firm at least one person, selected, designated and empowered by the heirs or legal representatives of the deceased partner to represent the interest of his estate in the copartnership; such person, so representing the interest of the estate of the deceased partner, shall have accorded to him access to all the books, papers and accounts of the firm, and may, at his election, remain and continue at the place of business thereof until all matters relating to the interest of the deceased partner and his estate shall have been fairly and satisfactorily arranged, and settled and adjusted, and the total amount due to the estate of the deceased partner shall have been ascertained and determined.

"The total amount ascertained and determined to be due the estate of the deceased partner, on account of his interest in the copartnership, shall be paid to the heirs or the legal representatives of the deceased partner, in twelve successive and equal monthly installments, commencing within one month from the time the amount so due has been ascertained and determined; for the amount of which installments the surviving partners shall execute and deliver to such heirs or legal representatives their promissory notes, payable as aforesaid, without interest, and satisfactorily secured by indorsement or otherwise; provided, however, that the surviving partners shall have the option to continue the said copartnership, the estate of the deceased partner taking the place of the decedent, on such terms and conditions as may be agreed upon between the surviving partners and the legal representatives of the deceased partner, but it shall not be obligatory upon the surviving partners so to do. The surviving partners and their successors shall also have the right and privilege of con-

tinuing the said business under the said designation and name of Newman & Levinson.''

Before dealing with this article specifically, it may be well first to consider the general scheme and scope of the agreement with regard to the right of a partner in the property of a partnership after dissolution, inasmuch as, according to the code, particular clauses of a contract are subordinate to its general intent, and the whole of a contract should be taken together so as to give effect to every part, if reasonably practicable, each clause aiding in the interpretation of the other.

Of course, as counsel for demurrants observes, the provisions of our statutes as found in the codes are simply declaratory of the law as it existed always; they do not change in any respect the law as it was adjudicated before their enactment, and, consequently, cases arising under the law as it stood anterior to the code may be appositely cited.

In the copartnership contract three distinct provisions may be noted:

1. A provision regulating the manner in which the partnership property shall be disposed of and divided among the partners, in case they shall be all living at the expiration of the term agreed upon for the continuance of the partnership, and the partnership be not renewed (Article XIII):

## ''XIII.

''At the time of the expiration of said partnership, under the terms hereof, if no new articles of copartnership have been agreed upon nor the present ones continued in force, and the copartnership renewed in the manner hereinafter provided for, the inventory shall be taken and appraisement made substantially in the manner hereinbefore provided in the case of the yearly inventory; thereupon the assets shall be turned into cash, if necessary, and the total amount of all the debts and liabilities due or owing by the copartnership to third persons shall be paid; next in order, the surplus capital, if any, standing to the credit of any partner, with any interest due thereon, as hereinbefore provided for, shall forthwith be paid to the partner entitled thereto; to meet such payment recourse must be had to all the cash of the copartnership remaining on hand or in bank, to the stock of merchandise on

hand, and, finally, to all outstanding accounts, claims and demands of the copartnership, whether represented by book accounts, promissory notes, judgments, or otherwise; then the interest, as hereinbefore provided for, upon the capital contributed by the copartners, if any be due to them, or any of them, shall be paid; and after all the debts and liabilities, surplus capital and interest shall have been paid to the parties entitled thereto, the residue of the assets of the copartnership, including cash on hand or in bank, store and office fixtures, merchandise, outstanding accounts, and all claims and demands, of whatsoever kind or nature, due or owing to the copartnership, shall be sold to the partner who will make the highest and best bid therefor, and the proceeds realized from such sale shall be applied in the first instance to the repayment to each of the copartners of the respective portions of the capital originally contributed by each to the copartnership, and if such proceeds are not sufficient to pay to each partner the full sum originally contributed by him to the capital of the copartnership, such proceeds shall be ratably divided among said copartners according to the amount of original capital contributed by each to the copartnership; that is to say, each partner shall receive such a percentage of the proceeds as his proportion of the original capital bears to the aggregate capital originally contributed to the copartnership by all the members thereof; but if such proceeds exceed in amount the aggregate original capital of the copartnership, the excess over and above such aggregate capital shall be considered as net profits, and shall be divided in the proportions hereinbefore provided for in case of profits—that is to say, the said William J. Newman shall receive seventy-five per cent of such excess; said John Levinson twenty per cent, and said Benjamin Newman five per cent."

2. A provision as to what a partner shall be limited to in case he breaks the partnership contract—disrupts the partnership—before the expiration of the term agreed upon (Article XIV):

## "XIV.

"Should any partner desire to withdraw from the copartnership before the expiration of said term of three years from said fifth day of July, 1888, he shall have the privilege

of doing so after having given at least six (6) months notice, in writing, to each of his copartners of his desire and intention to withdraw from the firm, and at the expiration of said six months his connection with the firm as a partner shall cease and terminate.

"Should a dissolution of the copartnership take place within six months after the date of this written agreement and declaration, by reason of any cause, matter or thing whatsoever, the partner retiring or withdrawing or causing the dissolution shall be deemed to have forfeited all his rights to any share of the profits that have been, or might be, realized by the firm from said fifth day of July, 1888, up to the date of such dissolution, and shall be entitled only to a repayment of his original contribution to the capital of the firm and any surplus capital actually paid in by him (exclusive of surplus capital arising from profits left in the business), together with interest on such original and surplus capital at the rate of seven (7) per cent per annum, as hereinbefore provided for; such repayment to be made in six (6) successive monthly installments, evidenced by promissory notes or otherwise, as may be agreed upon.

"Should a dissolution of the copartnership take place within two years from said fifth day of July, 1888, by reason of any cause, matter or thing whatsoever, the partner retiring or withdrawing or causing the dissolution shall be entitled to his share of the net profits realized during the existence of the copartnership, but in all other respects the same course shall be pursued as in this section already provided.

"In the event of the sudden demise of one of the copartners who has any surplus capital in the business, such demise shall constitute the necessary notice to the remaining partners, and the legal representatives of said deceased shall, if they require and demand it, be entitled to receive the full amount of such surplus capital within three (3) months after such demise."

3. A provision allowing the surviving partners, upon the death of a copartner, to purchase his share in the partnership and to succeed to the business. (See Article XII, supra.)

These three provisions form, as is contended by counsel for applicant, an intelligible, consistent, reasonable and just

scheme or plan; and in attempting to develop the scope of that plan this court conceives it can do no better than to adopt the views verbatim of counsel for petitioners.

What is that scheme or plan?

First—At the expiration of the term, if all the partners are alive and do not renew the partnership, the "assets shall be turned into cash, if necessary," and certain sums shall then be paid the respective partners. Then "the residue of the assets of the partnership . . . . shall be sold to the partner who will make the highest and best bid therefor," and the proceeds shall then be divided among all the partners. Now, the terms "assets" and "residue of the assets" include the goodwill and trademarks.

Counsel for the surviving partners denies that these words "residue of the assets" include goodwill because of the next following words, "including cash on hand or in bank, store and office fixtures, merchandise, outstanding accounts, and all claims and demands," etc. But counsel is clearly wrong in this, for his contention requires the insertion of the word "only" or "exclusively," or an equivalent, after "including," or the change of "including" to "consisting of," so as to make the passage read "the residue of the assets, including (only) or (exclusively)," or so as to substitute "consisting of" in place of "including." But the word "including" does not mean "including only," or "including exclusively," or "consisting of," and there is no warrant for making any such change as the counsel wishes. And, besides, the "assets" mentioned which "shall be turned into cash if necessary" are not followed by even such a word as "including." *All the assets* must be sold and the proceeds divided. *All the assets* include the goodwill and trademark. And the provision clearly is that in case all the partners live till the end of the term of the partnership agreed upon, and do not renew the partnership, all of them shall share in the value of the goodwill and trademark.

This provision is obviously reasonable and just.

Second—It is provided (Article XIV, supra) that if any partner shall break the partnership contract—shall break up, by withdrawal or otherwise, the partnership—before the expiration of the term agreed upon, he shall forfeit something—

more if within the first six months, less if after six months and within the first two years.

For this, too, there is an obvious reason, the purpose being to deter each copartner from breaking the contract of partnership.

Third—We come finally to Article XII, upon the language of which the decision of the controversy is to turn.

We find here the provision that upon the death of one of the copartners "the inventory provided for herein shall be taken." Whether the inventory referred to here is the same as the annual inventory mentioned in Article VII. on which profits are computed, or a special undescribed inventory, is not prefectly clear, for in Article XIII we find it provided that an "inventory shall be taken and appraisement made substantially in the manner hereinbefore provided in the case of the yearly inventory," language quite different from "the inventory provided for herein" in Article XII. But it is scarcely material whether the words "the inventory provided for herein" mean an inventory made like the annual inventory. provided for in Article VII or not, for in Article XIII the inventory provided for is expressly directed to be made up substantially like the annual inventory; and Article XIII does provide that the value of the goodwill and trademark shall, at the end of the term, be divided among all the partners, if then living. It is therefore clear that even if the words "inventory provided for herein" in Article XII mean an inventory made up substantially as described in Article VII, this would not be at all inconsistent with the idea that the value of the goodwill and trademark is to be divided. But while it is scarcely material to consider what is meant by the words "inventory provided for herein" in Article XII, it is worth mentioning that there seem to be three species of inventory provided for in these articles of partnership, viz.: (1) In Article VII an inventory made up in a manner there specified and for the purpose of computing annual profits; and for that purpose it would be clearly useless to put the value of the goodwill or trademark into the inventory (Steuart v. Gladstone, Wade v. Jenkins); (2) In Article XIII an "inventory . . . . made substantially in the manner" described in Article VII; and (3) in Article XII an "inventory pro-

vided for herein," that is, provided for in Article XII—an inventory made up not in any specified way, but in such reasonable manner as to subserve its purpose.

Next, we notice that the representative of the estate of the deceased partner is entitled to be present until "the total amount due to the estate of the deceased partner shall have been ascertained and determined." This indicates that the surviving partners are not expected to be the sole judges of what the interest of the estate in the partnership shall be, for, if so, of what benefit would it be to the representative of the deceased to supervise their proceedings? And even if the articles of partnership did provide for the surviving partners to be the sole judges in the matter, such provision would be void. For, on the contrary, it is for a court of justice to decide what is the "total amount due to the estate": See 12 Am. & Eng. Ency. of Law, p. 305, and n. 1.

Finally—"The total amount ascertained and determined to be due the estate of the deceased partner on account of his interest in the partnership shall be paid" to the estate, and thereupon the surviving partners shall succeed to the property of the partnership, and "shall have the right and privilege of continuing the said business under the said designation and name of Newman & Levinson."

There is nothing here like the provision in Steuart v. Gladstone, L. R. 10, Ch. D. 626, that the estate is to receive only "the sum which shall appear at the credit" of the deceased partner upon the books or upon any inventory, even if the inventory to be taken is to be made up like the annual inventory mentioned in Article VII. For, even if the inventory to be taken were to be made up like the annual inventory mentioned in Article VII for arriving at the profits, and without setting down the goodwill and trademark therein—even such an inventory would answer every purpose in ascertaining the "total amount due to the estate"; for, in any event, the goodwill and trademark would have to be taken into consideration and valued separately. And, further, while there is no provision limiting the interest of the estate to the "sum which shall appear at the credit" of the deceased partner upon any inventory, the amount to be paid to the estate shall be, without any limitation, "the total amount ascertained and

determined to be due the estate of the deceased partner on account of his interest in the partnership''; and this shall be after ''all matters relating to the interest of the deceased partner and his estate shall have been fairly and satisfactorily arranged, and settled, and adjusted.''

The substance of Article XII clearly is, as was the case in Hall v. Barrows and other cases cited by counsel for applicant, that the surviving partners have the privilege of buying out the interest of the decedent at its actual value.

Reynolds v. Bullock, 47 L. J. Ch. 773 (decided in 1878 by the chancery division of the high court of justice), is a most valuable decision, rendered after a full and able argument. The partnership was dissolved by expiration of the term agreed upon, and by the twenty-sixth and twenty-eighth clauses of the partnership deed the defendant was entitled to succeed to the partnership business and property, being bound to pay the plaintiff the value of his share in the ''property and effects'' of the partnership. The plaintiff sued for his share in the value of the goodwill. The decision is so pertinent to the case at bar that it may be well to quote. The court said:

''It appears to me that the goodwill ought to be valued for the present purpose. It is a question of the contract of the parties, arising upon the twenty-sixth and twenty-eighth clauses of the deed of partnership; in other words, it is a question whether goodwill comes under the words 'property and effects.' It was settled by Hall v. Barrows, 32 L. J. Rep. Ch. 538, etc., that it is part of the property and assets of a firm. The fact in the present case, that the business was the defendant's when the partnership began, seems to me material; the goodwill of the business at the end of the partnership is a new and different thing from that which existed before. As to the other cases mentioned, I think that Burfield v. Rouch, 31 Beav. 241, and Hall v. Hall, 20 Beav. 139, are not authorities on this question. Austin v. Boys, 24 Beav. 598, etc., cited in Mr. Justice Lindley's book, was a case of a special kind, which depended very much upon the terms of the particular contract, and affords no assistance for the present case. The view of Sir William Grant in Kennedy v. Lee, 3 Mer. 441, like other early cases

in reference to goodwill, is really inapplicable to the present law on the subject. I quite agree with the observations as to the desirableness of making such things as these plain in the contract; if this had been done the present question would not have arisen, but I think that a particular provision was required, expressly negativing the view that the goodwill was to be deemed part of the business, and stipulating that it should, at the expiration of the term, belong to the defendant solely. It is perhaps unlikely that the plaintiff would have accepted such terms; at all events, no such terms were made, and therefore the goodwill must now be dealt with as part of the property."

I consider the case of Hall v. Barrows, 3 N. R. 259, as the most appropriate of all the cases cited to the matter here in controversy. That was an action by the executors of Hall against his surviving copartners for a share in the value of the goodwill of the business and of the trademarks of the former firm. By the partnership articles the estate was entitled to receive from the surviving partners the value of the share in the estate in the partnership property, the surviving partner having the right to take the same at a valuation and to succeed to the business. Lord Chancellor Westbury held that the goodwill of the business ought to be taken into account in the valuation; and, also, that the exclusive right to use the trademark was part of the property of the partnership and ought to be included in the valuation. While this case is not among those cited or adverted to by counsel for demurrants, the argument for surviving partner is singularly similar in both cases and upon a state of facts quite analogous.

(See argument on page 260 and remarks of lord chancellor on page 263, 3 N. R.)

Even if the question were in doubt and evenly balanced, whether the estate is or is not to be deprived of a share of the goodwill and trademark, then the decision must be in favor of the estate.

It is clear, however, to the mind of the court that upon the death of one of the partners he is not to suffer thereby any forfeiture of his property, but his estate is to receive his full and fair share in all the property assets of the partner-

ship, not in any wise forfeiting the decedent's share in that part of the partnership property—more valuable than all the rest—the goodwill of the business and the trademark. And this conclusion makes the partnership contract intelligible, reasonable, consistent and just.

It follows from the foregoing that the demurrer should be and it is overruled.